ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 16 2012

at____o'clock and____min.____M.
SUE BEITIA, CLERK

ADAM ASQUITH

Plaintiff, pro se

4654 Hauaala Rd.
Kapaa, HI 96746
808-823-6598
adam_asquith@yahoo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE OF HAWAII

| | |
|---|---|
| ADAM ASQUITH, | CIVIL NO. CV12 00134 HGRLP |
| Plaintiff, | |
| vs. | |
| KAUAI ISLAND UTILITY COOPERATIVE | COMPLAINT; ~~MOTION FOR PRELIMINARY INJUNCTION~~; EXHIBITS A-C; SUMMONS |

**COMPLAINT FOR PRELIMINARY INJUNCTION**

The plaintiff, Adam Asquith, files this complaint against the KAUAI ISLAND UTILITY COOPERATIVE ("KIUC" or "the Defendant").

### I. NATURE OF THE ACTION

1. The Defendant is rushing forward with the installation of so called "smart meters" throughout the island of Kauai, Hawaii, despite serious security and privacy concerns, some of which involve apparent constitutional and statutory violations.
2. The Plaintiff seeks a judgment requiring the Defendant to cease all smart meter installations until satisfactory alternative options for all KIUC members are made available.
3. The requested preliminary injunction is urgently needed to prevent potential injury to plaintiff and thousands of other individuals residing on Kauai, and the Plaintiff has brought this action accordingly.

1

## II. JURISDICTION AND VENUE

4. This action raises several questions under Fourth and Fifth and Amendments to the United States Constitution, as well as issues under federal statute.
5. The Court has subject matter jurisdiction over these federal claims pursuant to 28 U.S.C. 1331 and 1343.
6. This Court has personal jurisdiction over all parties hereto because they are all residents of Hawaii and conduct their activities in Hawaii.
7. Venue is proper under U.S.C. 1391 in the District of Hawaii, because a substantial part of the events giving rise to the subject claims arose in this district.

## III. PARTIES

8. Plaintiff resides on the island of Kauai. Plaintiff is a member of, and receives electrical service from, KIUC, and as such will soon suffer the forced installation of a smart meter at my residence absent the injunctive relief.
9. Defendant, Kauai Island Utility Cooperative ("KIUC"), is a not-for-profit generation, transmission and distribution cooperative owned and controlled by the members it serves. Headquartered in Lihue, Kauai, Hawaii, the cooperative currently serves more than 32,000 electric accounts throughout Kauai.

## IV. FACTUAL BACKGROUND

10. Kauai is located in Hawaii, and is home to approximately 67,000 residents.
11. With very few exceptions, all residents and commercial enterprises receive electrical service from Kauai Island Utility Cooperative.
12. KIUC is a member-owned cooperative but still follows regulatory oversight of the Hawaii Public Utilities Commission.
13. KIUC is managed by a nine member Board of Directors. Directors serve three year terms.

### A. KIUC Smart Grid Project

14. The American Recovery and Reinvestment Act of 2009, signed by Barack Obama in February, 2009, provided the U.S. Department of Energy, (the "DOE") with approximately $4.5 billion of federal tax dollars to modernize the electric power grid. Of this funding, $3.4 billion went into the Smart Grid Investment Grant Program ("SGIG") for the purpose of funding competitively selected projects across the country. One of the projects selected by the DOE for its SGIG is the Smart Grid Demonstration Project to the National Rural Electric Cooperative Association ("NRECA"). In 2009, the NRECA received $33.9 million from the DOE for this project. KIUC is a member of NRECA and participating in the smart grid project. KIUC is receiving approximately $6 million of this DOE money for its smart grid project.

2

*15.* On 29 September, 2011, the Hawaii Public Utilities Commission approved KIUC's request to commit funds to participate in the National Rural Electric Cooperative Association's national demonstration project. *(see Hawaii Public Utilities Commission, Docket No. 2010-0299, Decision and Order, 29 September, 2011)*.(Exhibit A).

16. One of the primary objectives of the NRECA's DOE grant and KIUC's portion of the project is to, "demonstrate advanced two-way metering.." *(see Hawaii Public Utilities Commission, Docket No. 2010-0299, Decision and Order, 29 September, 2011)*. These communication/monitoring devices are the so called "smart" meters.

## B. Smart Meters

17. KIUC has announced plans to proceed with full replacement of all of its members' existing analog electricity meters, with so called "smart" meters beginning in April, 2012. KIUC has not provided its members with the individual option of keeping a current analog meter servicing their home (Exhibit B).
18. This start date is six months earlier than the estimated start date of 31 August, 2012 provided in the PUC Decision and Order.
19. KIUC has already installed several smart meters at the Lihue Elderly Gardens apartments on 24 February, 2012. KIUC installed these meters without notifying the residents of the apartments. KIUC has not provided explanation for the accelerated start date.
20. The smart meters incorporated in the KIUC project are a wireless-ready device which in the typical application functions as a radio transmitter, utilizing a wireless radio frequency ("RF") network to communicate power usage data from the member's home or business back to the utility on a regular, if not constant, basis.
21. Smart meters and related systems will allow KIUC to conduct automated and remote meter reading, collect detailed measurements about member usage within their premises, collect and store data about such usage, and communicate data to and from members' meters.
22. Federal support for the development of smart meter systems began with the Energy Policy Act of 2005, was supplemented with the passage of the Energy Independence and Security Act of 2007, and heavily funded by the American Recovery and Reinvestment Act of 2009, which set aside $11 billion for the creation of a smart grid on a national basis.
23. None of this federal legislation in any way mandates KIUC member participation in a smart meter program or smart grid. The Energy Policy Act of 2005 very clearly establishes an optional standard by which the utilities are required to make "time-based" meters available "upon customer request" :

> Not later than 18 months after August 8, 2005, each electric utility shall offer each of its customer classes, and provide individual customers *upon customer request*, a time-based rate schedule under which the rate charged by the electric utility varies during different time periods, and reflects the variance, if any, in the utility's cost in generating and purchasing electricity at the wholesale level. 16 U.S.C. (d)(14)(A) [Emphasis added].

24. The KIUC smart meter project is comprised of a system that utilizes a "mesh" network that requires linkage and communication via RF waves between individual

3

member meters and wireless repeaters. Via this interlocking network of wireless technology, meters and other sensing devices are used to relay or "hop" usage data from point to point until it reaches its final destination, the utility. KIUC's wireless system is designed to support two-way communication between a member's meter and the utility. Individual smart meters can be upgraded remotely by the utility, providing the ability to implement future innovations and add-ons easily.

25. A smart meter installed by KIUC is therefore a communication and monitoring device in furtherance of the utility's system for purposes that go beyond the delivery of electricity to the residence to which the meter is attached.

### C. Privacy and Security Concerns Surrounding Smart Meters

26. Funding and deployment during what some have dubbed the "smart grid gold rush" has vastly outstripped the federal government's ability to develop meaningful privacy and security standards and regulations within one of the nation's most critical infrastructures. *(see Smart Grid Privacy and Security Risks Loom for Agencies AOLEnergy.com (August 5, 2011): http://energy@aol.com/2008/08/05smart-grid-privacy-and-security-risks-loom-for-agencies/)*

27. According to Pike Research analysis, end-to-end protection of private and commercial usage data is impossible. Home area networks (HANs), commercial building networks, and utility networks all perform well in terms of keeping data encrypted within their domains. However, these domains terminate at the smart meter, and the only way for data to pass from one network to the other is for the smart meter to decrypt the data from one side and re-encrypt it on the other. Consequently, the data are, for a short while, unencrypted on the meter and could be successfully eavesdropped. Pike senior analyst Bob Lockhart cautions, "It would be naïve to think that smart meters will not be successfully attacked. They will be. In fact, smart meters represent a worst-case scenario in terms of security: the devices lack sufficient power to execute strong security software; they are placed in physically non-secure locations; and they are installed in volumes large enough that one or two may not be missed. Therefore, the only valid cyber security approach for smart metering is to assume from the outset that some devices will be successfully attacked and create sufficient resiliency to allow the remainder of the network to survive." *(See Study Shows Greater Security Concerns for Smart Meters, http://www.smartmeters.com/the-news/2047-study-shows-greater-security-concerns-for-smart-meters.html)*

28. On January 12, 2011, the U.S. Government Accountability Office reported that smart grid technologies such as wireless smart meters that are deployed at homes and businesses were being developed and deployed without adequate attention to security features including thorough event logging and other forensic features (See *Progress Being Made on Cyber Security Guidelines, but Key Challenges Remain to be Addressed, GAO 11-117, January 17, 2011, http://www.gao.gov/products/GAO-11-117*)

29. On February 3, 2012, The Congressional Research Services reported that "Detailed electrical usage data offers a window into the lives of people inside a home by revealing what individual appliances they are using, and the transmission of the data potentially subjects this information to interception or theft by unauthorized third

4

parties or hackers." (See: *Smart Meter Data: Privacy and Cybersecurity, by B.J. Murrill, E.C. Liu, and R.M. Thompson, 3 February, 2012, CRS Report R42338*).

30. Reports of cyber attacks and security breaches are regularly in the news (See e.g.: *24,000 Pentagon files stolen in major cyber breach, official says, The Washington Post (July 14, 2011)*: http://washingtonpost.com/blogs/checkpoint-washington/post/24000-pentagon-files-stolen-in-major-cyber-breach-official-says/2011/07/14/gIQAsaaVEI_blog.html?tid=sm_twitter_washingtonpost; *US energy grid vulnerable to cyber attacks, MSNBC (September 1, 2011)*; http://www.msnbc.msn.com/id/44358679/ns/technology_and_science-security/t/us-energy-grid-vulnerable-cyber-attack/#.TmG1bY7H9i1)
31. The NRECA has developed an Interoperability and Cybersecurity Plan for cooperatives participating in the DOE funded project, including KIUC. However, KIUC has not developed and made available their own plan as required by the DOE and NRECA.
32. KIUC appears to be relying on the meter manufacturer's security features and encryption technology. KIUC has admitted that this is not a fail-safe system and that it is possible that a third party could access the personal information being collected and transmitted by the new smart meters. (*see, CURRENTS MAGAZINE, October. 2011*).
33. While the Consumer Advocacy Division of the PUC reviewed and approved of the KIUC's Smart Grid Project, privacy and other constitutional rights of KIUC members were never considered *(see Hawaii Public Utilities Commission, Docket No. 2010-0299, Division of Consumer Advocacy's Statement of Position, 16 May, 2011)*.
34. Privacy and security issues associated with smart meters are now widely recognized (See Exhibit C) and should be adequately addressed by KIUC before forced installation is allowed.

## CLAIMS AGAINST DEFENDANT

### COUNT I

### Violation of the Energy Policy Act of 2005 (16 U.S.C &2621(d)(14)(A) and (C)

35. Plaintiff reasserts and incorporates by reference the allegations contained in the proceeding paragraphs as is fully set forth herein.
36. The Defendant is an "electric utility" under 16 U.S.C. 2602(4).
37. By forcing its members to accept smart meters, KIUC has not provided the freedom and choice mandated by the Energy Policy Act of 2005, and is therefore in violation of 16 U.S.C. 2621(d)(14)(A) which states:

> Not later than 18 months after August 8, 2005, each electric utility shall offer each of its customer classes, and provide individual customers *upon customer request*, a time-based rate schedule under which the rate charged by the electric utility varies during different time periods, and reflects the variance, if any, in the utility's cost in generating and purchasing electricity at the wholesale level. [Emphasis added].

A further mandate is set forth in U.S.C. 2621(d)(14)(C) which states:

> Each electric utility subject to subparagraph (A) shall provide each **customer requesting** a time-based rate with a time-based meter capable of enabling the utility and customer to offer and receive such rates, respectively. [Emphasis added]

38. As a direct result of KIUC's failure to provide the freedom of choice clearly required by federal statute, the forced installation of smart meters by KIUC will cause the plaintiff to suffer substantial and irreparable injuries.

### COUNT II

### Violation of the Fourth Amendment

39. Plaintiff reasserts and incorporates by reference the allegations contained in the proceeding paragraphs as is fully set forth herein.

40. Unlike a traditional analog meter which provides historical data about energy usage, smart meters can be accessed remotely and contain an uncertain amount of data about occupant behavior. This information could facilitate threats to a member's physical security and property interests – for example by providing detailed information regarding when an individual is home.
41. Smart meter technology creates a new system of data collection, communication and information sharing with regard to energy use. The potential exists to collect, store and share private member information without member consent or control. The new technology allows KIUC to obtain a highly detailed picture of activities within a home.

42. Before smart meters came on the scene the only information KIUC could collect from members was the total consumption of electricity on a monthly or less frequent basis, and only in terms of kilowatt hours consumed. In contrast, smart meters can allow tracking of time patterns associated with occupants of a home.
43. Smart meters provide rich knowledge about intimate details of a member's life and serious concerns exist regarding access to personal data gleaned from the devices. Access may also be obtained by accidental breach or cyber attack.
44. In 2001, The Supreme Court affirmed the primacy of privacy in the home by prohibiting the use of a thermal imager to gather details about the home that would have been previously inaccessible without a physical trespass (*see Kyllo v. United States, 533 U.S. 27 (2001)*. This decision built upon previous judgments in which the Court maintained robust Fourth Amendment protections of the home based on the quality and quantity of the data that can be known *(See United States v. Karo, 468 U.S. 705, 716 (1984) (prohibiting government use of a beeper to determine without warrant whether a particular article or person is in a home at a particular time); Arizona v. Hicks, 480 U.S. 321, 327-28 (1987) (holding that moving stereo equipment in order to locate serial numbers constituted search and had to be supported by probable cause).*
45. As KIUC members have no true choice in whether or not to provide new additional data to KIUC, and further have not provided their consent, the subject smart meter installations constitute an impermissible invasion of privacy in violation of the Fourth Amendment of the United States Constitution.
46. Because of Defendant's actions and omissions, Plaintiff has suffered, and will continue to suffer, substantial injury and irreparable harm.

## COUNT III

### Violation of the Fifth Amendment

47. Plaintiff reasserts and incorporates by reference the allegations contained in the proceeding paragraphs as is fully set forth herein.
48. KIUC is moving forward with a plan whereby members will suffer a permanent occupation of their homes by KIUC's radio frequency equipment.
49. KIUC is responsible for delivering electricity to its members. That duty, however, is sufficiently performed by standard analog or non-smart meters.
50. Smart meters have additional equipment designed to serve KIUC's purpose of collecting substantially more detailed private data from a member's home and then transmitting this private data to KIUC, and then to NRECA.
51. With consent of the member there would be no taking, but in the instant case consent has not been sought by KIUC.
52. Requiring members to allow KIUC to attach RF transmitting equipment to the home to collect private data the member does not want to share, and to facilitate KIUC's collection of data from other homes, imposes a permanent physical occupation of the residence without consent and without just compensation.
53. Allowing a member to "opt-out" by paying an unreasonable penalty does not cure the constitutional violation. This is especially true with KIUC's current plan and actions where there is no option to keep an analog meter.

54. KIUC is currently not offering an "opt-out" alternative. Members must accept a smart meter, either immediately or in a deferred installation. One forced installation method already employed by KIUC is to install a smart meter with the transmitter turned off. Such meters will still collect the same private information, but it will be stored on a computer memory card instead of being transmitted wirelessly throughout the day. Finally, for persons residing in a condominium or apartment complex, there is in the typical case no alternative option whatsoever.
55. KIUC's smart meter installation as currently proposed and implemented is unconstitutional because members are required to allow KIUC to attach equipment to their homes for KIUC's own purposes without consent and without compensation in violation of the takings clause in the Fifth Amendment of the United States Constitution.
56. Because of Defendant's actions and omissions, Plaintiff has suffered, and will continue to suffer, substantial injury and irreparable harm.

### IV. Prayer for Relief

The Plaintiff respectfully request that the Court:

1. Enter a preliminary injunction requiring KIUC to cease and suspend the installation of smart meters on the island of Kauai, Hawaii, until such time as:

   a. KIUC recognizes the right of members to keep and continue to utilize analog meters at no additional expense; and
   b. KIUC establishes a policy whereby smart meters will be installed only on an "opt-in" basis; and

2. Grant the Plaintiff such other relief as the Court determines just and proper.

Dated this 16 day of March, 2012.


Respectfully submitted,

By: _____

PLAINTIFF, pro se

ADAM ASQUITH

Plaintiff, pro se

4654 Hauaala Rd.
Kapaa, HI 96746
808-823-6598
adam_asquith@yahoo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE OF HAWAII

| ADAM ASQUITH, | ) | CIVIL NO. _____ |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KAUAI ISLAND UTILITY | ) | |
| COOPERATIVE | ) | Exhibits A-C |
| | ) | |

Exhibit A.    Docket Do. 2010-0299 before the Public Utilities Commission of the State of Hawaii, DECISION and ORDER, 29 September, 2011.

Exhibit B.    14 December, 2011, letter from KIUC to American Civil Liberties Union, Hawaii.

Exhibit C.    Smart Meter Data: Privacy and Cybersecurity Brandon J. Murrill, Legislative Attorney, Edward C. Liu, Legislative Attorney, Richard M. Thompson II, Legislative Attorney, February 3, 2012, Congressional Research Services, R42338.

Respectfully submitted,

By: _____

PLAINTIFF, pro se